**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.:

**BETHANIEL MERAZ,**

     Plaintiff,

v.

**HSS SECURITY, LLC,**

     Defendant.

---

**COMPLAINT AND JURY DEMAND**

---

**COMES NOW**, Plaintiff, Bethaniel Meraz, by and through his counsel, Baumgartner Law, LLC, and respectfully submits this Complaint and Jury Demand against the above-named Defendant, and alleges and avers as follows:

## I.  <u>JURISDICTION AND VENUE</u>

1.    Plaintiff brings this action pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq*. (ADA), Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* ("Title VII"), Colo.Rev.Stat. § 34-24-401 *et. seq.* ("CADA"), Colo.Rev.Stat. §24-34-401 et seq.

2.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§1331, 1343(a)(4), 1367, 42 U.S.C. § 2000e-5, and the aforementioned statutory provisions.

3.    This Court has personal jurisdiction over Defendant because Defendant's business is in Colorado, Defendant has transacted business in Colorado, and because Defendant's illegal employment practices were committed in the State of Colorado.

4.    Venue is proper in the United States District Court for the District of Colorado under 42 U.S.C. § 2000e-5(f)(3), because the relevant employment records are stored in Colorado, Plaintiff worked in Colorado at the time of Defendant's unlawful employment practices, and because Plaintiff would have worked in Colorado if not for Defendant's unlawful employment practices.

## II.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

5.    Plaintiff has timely invoked and fully exhausted all administrative remedies applicable to this action.

6.    Plaintiff timely filed a Charge with the EEOC alleging discrimination on the basis of a protected health condition as well as retaliation in violation of Title VII.

7.    The Charge was filed within 300 days of the occurrence of one or more of the alleged unlawful employment practices in violation of 42 U.S.C. § 2000, *et seq*. Plaintiff filed his Charge on June 29, 2023.

8.    The EEOC issued a Notice of Right to Sue on August 26, 2024. Plaintiff is filing the current Complaint and Jury Demand within 90 days of receiving the Notice of Right to Sue.

## III.    PARTIES

9.    Plaintiff is an individual and currently resides in the State of Colorado. At the time of the incidents that gave rise to this action, Plaintiff was a resident of the State of Colorado.

10.    Defendant, HSS Security , LLC (hereafter referred to as "Defendant") is a for-profit corporation licensed to transact business in the State of Colorado. Defendant's principal office address is 990 S. Broadway, Suite 420, Denver, Colorado 80209.  Defendant is an employer subject to the provisions of Title VII and CADA.

2

## IV.  <u>GENERAL ALLEGATIONS</u>

11.    Plaintiff incorporates by reference herein all preceding allegations set forth in this Complaint.

12.    On January 25, 2023, Defendant unlawfully terminated Plaintiff's employment.

13.    Plaintiff was the victim of discrimination and retaliation in violation of State and Federal law when he was unlawfully discharged from his employment.

14.    Plaintiff began employment with Defendant on June 7, 2022. Plaintiff was subsequently employed by Defendant as a security officer, and he worked exclusively in a hospital setting.

15.    Since the date he was hired, Plaintiff was a full-time employee of Defendant. Plaintiff was a hard-working, dependable member of Defendant's staff.

16.    In late 2022, Plaintiff contracted Covid-19 a predictable result of working every day in a hospital. Although there is simply no way of knowing for certain where Plaintiff acquired Covid-19, it is reasonable to believe that it was a direct result of his placement in a hospital setting.

17.    Plaintiff developed suffering severe physical effects of the Covid-19 infection, which caused him nausea, vomiting, and long-term migraine headaches that resulted in him being unable to balance, walk, or see. This condition was well-documented by Plaintiff's treating physician. Plaintiff gave Defendant his physician's leave of absence letters verifying his condition.

18.    After Plaintiff fully informed Defendant of his medical condition, and Defendant initially approved his leave of absence.

19.    On January 10, 2023, Plaintiff submitted a formal request for leave of absence using HSS's medical leave of absence form. On the form, Plaintiff clearly requested leave until January 30, 2023. Defendant never objected to the leave as requested.

20.    Two days later, on January 12, 2023, Plaintiff's supervisor emailed the leave-of absence

specialist in the company, and stated that he was able to restaff Plaintiff's position, and that when Plaintiff returned to work, he would be able to use Plaintiff as "flex" staff, meaning that he could assign him to different locations as needed to provide security services. However, Plaintiff's supervisor also asked if he could terminate Plaintiff, citing previous medical leaves of absence.

21.    In short, Defendants admitted that they could accommodate Plaintiff's serious and protected medical condition, but they simply preferred to fire him.

22.    Defendant's leave of absence specialist sent one email to Plaintiff on January 16, 2023, six days after he submitted his formal leave of absence form, and while Plaintiff was in the midst serious illness.

23.    On January 25, 2023, the leave of absence specialist falsely claimed that she tried multiple times to contact Plaintiff with no success, and she directed Plaintiff's supervisor to fire Plaintiff on that false and pretextual basis.

24.    Defendant terminated Plaintiff's employment he was ill and required medical attention for Covid -19 and its immediate, debilitating effects on Plaintiff.

25.    Defendant made absolutely no attempt to accommodate Plaintiff's health condition, despite stating that they were able to do so.

26.    Plaintiff's termination was done for discriminatory, retaliatory, and unlawful purposes. Defendant discriminated against Plaintiff and retaliated against him on the basis of a protected health condition.

27.    Defendant offered a transparently pretextual reason for terminating Plaintiff's employment: Defendant claimed that Plaintiff could not be reached after multiple attempts, when only one email was sent while Plaintiff was unable to respond; and then Defendant claimed that Plaintiff voluntarily quit his position. The true reason for the termination was set forth in company

emails: Plaintiff had previously used limited sick leave and was now suffering from a protected medical condition.

28.     As a direct and proximate result of the Defendant's conduct and breach, Plaintiff incurred past and future economic and non-economic losses and damages including, but not limited to, loss of income, loss of future earnings, loss of benefits, loss of future benefits, loss of earning potential, loss of employment opportunities; psychological, emotional, and mental anguish; humiliation, degradation, and embarrassment; pain and suffering.

## V.   CLAIMS FOR RELIEF

### A.     FIRST CLAIM FOR RELIEF

*Employment Discrimination in Violation of The Americans with Disabilities Act*

29.     Plaintiff incorporates by reference herein all preceding allegations set forth in this Complaint.

30.     Plaintiff's Covid-19 infection was a covered disability under the ADA because it substantially limited one or more life activities, including the ability to not walk, stand, lift, or bend due to his need to remain in bed, and had limited ability to see, to communicate, and work due to his health condition.

31.     Plaintiff is well qualified to perform the essential functions of his job with or without reasonable accommodation. A "qualified" person means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. 42 U.S.C. § 12111(8).

32.     Plaintiff possesses the requisite skill, experience, education, and other job-related requirements of his position.

33.    Plaintiff suffered an adverse employment decision despite his qualifications when he was terminated.

34.    Plaintiff's position was not eliminated after his discharge. Thus, the circumstances surrounding Plaintiff's termination give rise to an inference of discrimination.

35.    Defendant, by and through the conduct of its agents and employees, discriminated against Plaintiff by terminating him due to a disability.

36.    The effect of Defendant's unlawful employment practices described above has been to deprive Plaintiff of equal employment opportunities, adversely affect his status as an employee, and deprive him of his right to continued employment based on his health status.

37.    As a direct and proximate result of the Defendant's conduct, Plaintiff incurred past and future economic and non-economic losses and damages including, but not limited to, loss of income, loss of future earnings, loss of benefits, loss of future benefits, loss of earning potential, loss of employment opportunities; psychological, emotional, and mental anguish; humiliation, degradation, and embarrassment; pain and suffering.

38.    Defendant's unlawful employment practices were committed intentionally, or at least with reckless indifference to Plaintiff's federally protected rights, thereby subjecting Defendant to punitive damages.

### i.  SECOND CLAIM FOR RELIEF

*Retaliation in violation of The Americans with Disabilities Act*

39.    Plaintiff incorporates by reference herein all preceding allegations set forth in this Complaint.

40.    The actions of Defendant, its agents and employees constituted discriminatory and unfair

employment practices. Plaintiff was terminated on the basis of a disability, and in retaliation for taking a leave of absence for his disability. Plaintiff also suffered disparate treatment discrimination when she was treated differently based on his protected class.

41.     Plaintiff was further discriminated against in matters of compensation, terms, conditions, or privileges of employment when she was subjected to disparate treatment and deprived of employment opportunities consistent with his able-bodied co-workers.

42.     To establish a prima facie case of retaliation, the plaintiff must be able to show (1) that she engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection exists between the protected activity and the materially adverse action. *Hansen v. SkyWest Airlines*, 844 F.3d 914, 925 (10th Cir. 2016). Once the plaintiff successfully asserts a prima facie retaliation case, the burden shifts to the employer to come forward with a legitimate, non-retaliatory rationale for the adverse employment action. *Id*.

43.     When Plaintiff wrote to Defendant informing them of his protected condition, filed out a medical leave of absence request, and that he would need time off work to receive medical treatment, he engaged in protected activity.

44.     In response, Defendant's supervisor almost immediately emailed the leave of absence supervisor, admitted to the ability to accommodate Plaintiff, but still asked how to terminate Plaintiff.

45.     After Plaintiff informed Defendant of his disability, Defendant retaliated against Plaintiff in the form of actual termination.

46.     Plaintiff reasonably understood the response from her employer to be a materially adverse decision to her employment.

47.    There is a causal connection between the protected activity and the materially adverse employment decision because Plaintiff's disability was the moving force behind his termination.

48.    Plaintiff's assertion of his protected rights was the only motivating factor in the retaliatory actions taken by Defendant.

49.    The timing of Defendant's internal emails as well as the termination email indicates a direct relationship between Plaintiff's protected activity and his termination.

50.    As a direct and proximate result of the Defendant's conduct, Plaintiff incurred past and future economic and non-economic losses and damages including, but not limited to, loss of income, loss of future earnings, loss of benefits, loss of future benefits, loss of earning potential, loss of employment opportunities; psychological, emotional, and mental anguish; humiliation, degradation and embarrassment; pain and suffering.

51.    Defendant's unlawful employment practices were committed intentionally, or at least with reckless indifference to Plaintiff's federally protected rights, thereby subjecting Defendant to punitive damages.

52.    Plaintiff is also entitled to recover his reasonable costs and attorney's fees for bringing this action, pursuant to 42 U.S.C. §2000e-5(k).

### ii.    THIRD CLAIM FOR RELIEF

*Employment Discrimination in Violation of C.R.S. § 24-34-401 et. seq. (CADA)*

53.    Plaintiff incorporates by reference herein all preceding allegations set forth in this Complaint.

54.    To establish a prima facie case of disability discrimination, a plaintiff must show: (1) he or she belongs to a protected class; (2) he or she was qualified for the job at issue; (3) he or she

8

suffered an adverse employment decision despite his or her qualifications; and (4) the circumstances give rise to an inference of unlawful discrimination. *St. Croix v. University of Colorado Health Sciences Center*, 166 P.3d 230, 236 (Colo.App. 2007).

55. Plaintiff belongs to a protected class in Colorado because he was disabled, as defined by the ADA. *See* 42 U.S.C. § 12101 *et seq*. While Plaintiff was on bed rest, he was unable to walk, stand, lift, or bend due to his need to remain in bed, and had limited ability to see, think, or communicate do to debilitating migraine headaches due to his health condition.

56. Defendant was aware that Plaintiff was suffering from a health condition because Defendant acknowledged it in internal emails.

57. Plaintiff possessed the requisite skill, experience, education, and other job-related requirements of his position.

58. In response to Plaintiff reporting his disability, Defendant took adverse employment actions against Plaintiff in the form of actual termination.

59. Plaintiff's position was not eliminated after his discharge. Thus, the circumstances surrounding Plaintiff's termination give rise to an inference of discrimination.

60. The adverse employment activity was causally related to Plaintiff's disability.

61. Defendant offered transparently pretextual reasons for the adverse employment actions it took on Plaintiff.

62. Defendant, by and through the conduct of its agents and employees, discriminated against Plaintiff by terminating him due to a disability.

63. The effect of Defendant's unlawful employment practices described above has been to deprive Plaintiff of equal employment opportunities, adversely affect his status as an employee, and deprive him of his right to continued employment based on his health status.

64.     As a direct and proximate result of the Defendant's conduct, Plaintiff incurred past and future economic and non-economic losses and damages including, but not limited to, loss of income, loss of future earnings, loss of benefits, loss of future benefits, loss of earning potential, loss of employment opportunities; psychological, emotional, and mental anguish; humiliation, degradation, and embarrassment; pain and suffering.

65.     Defendant's unlawful employment practices were committed intentionally, or at least with reckless indifference to Plaintiff's State protected rights, thereby subjecting Defendant to punitive damages.

66.     Plaintiff is also entitled to recover his reasonable costs and attorney's fees for bringing this action, pursuant to C.R.S. § 24-34-405.

## B.      **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

a.  All declaratory relief and injunctive relief, as appropriate;

b.  Actual economic damages, including but not limited to, unpaid minimum wages, unpaid overtime, unpaid vacation, back pay, font pay, and lost benefits, as established at trial;

c.  Compensatory damages, including but not limited to those for future pecuniary and non-pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, and other non-pecuniary losses;

d.  Punitive damages for all claims as allowed by law, in an amount to be determined at trial;

   e.   Prejudgment and post-judgment interest at the highest lawful rate;

   f.   Attorneys' fees and costs; and

   g.   Any further relief the Honorable court deems just and proper.

**PLAINTIFF DEMANDS TRIAL TO A JURY ON ALL ISSUES SO TRIABLE**

   Dated this 22nd day of November, 2024.

                                        Respectfully submitted,
                                        **BAUMGARTNER LAW, L.L.C.**
                                        *Original signature on file at Baumgartner Law, L.L.C.*


                                         *s/ S. Birk Baumgartner*
                                        S. Birk Baumgartner
                                        Baumgartner Law, LLC
                                        730 17th Street, Ste. 340
                                        Denver, CO 80202
                                        Phone: (303) 529-3476
                                        Fax: (720) 634-1018
                                        birk@baumgartnerlaw.com


Plaintiff's Address:
c/o Baumgartner Law, LLC
730 17th Street, Ste. 340
Denver, CO 80202

11